**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

WILLIAM GRECIA,            )
                                )
          Plaintiff,        )
                                )
         vs.            )   **Case No. 6:21-cv-00309**
                                )
PAYPAL, INC.,             )
                                )
         Defendant.    )
                                )
                                )

## DEFENDANT PAYPAL, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

**TABLE OF CONTENTS**

I.     INTRODUCTION ....................................................................................................... 1
II.    GRECIA'S LITIGATION HISTORY ......................................................................... 2
III.   TECHNICAL BACKGROUND.................................................................................. 3
IV.    GRECIA IS COLLATERALLY ESTOPPED FROM BRINGING THIS ACTION ......... 4

       A.    INDEFINITNESS ........................................................................................... 4
       B.    PATENT-INELIGIBLE SUBJECT MATTER ................................................ 6

             1.    *Alice* Step One........................................................................................ 6
             2.    *Alice* Step Two: Asserted Claims Do Not Add Any Inventive
                   Concept ...................................................................................................... 9

V.     GRECIA FAILS TO SUFFICIENTLY PLEAD INFRINGEMENT .............................. 10

       A.    Grecia alleges the claimed "computer" is the combination of a PayPal
             server and an unspecified third-party merchant computer.................................... 10
       B.    The "computer" Grecia identifies does not establish a connection with the
             PayPal mobile application................................................................................... 13
       C.    Grecia fails to allege that PayPal performs the "branding" step F ....................... 13

VI.    CONCLUSION......................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adaptix, Inc. v. AT&T Mobility LLC*,
No. 6:12-CV-120, 2015 WL 12696219 (E.D. Tex. Sept. 29, 2015).........................................8

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
134 S. Ct. 2347 (2014)......................................................................................... *passim*

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................14

*Gabriel De La Vega v. Microsoft Corp.*,
W-19-CV-00612-ADA, Dkt. 36 (W.D. Tex. Feb. 7, 2020)...................................................15

*Grecia v. Bank of New York Mellon Corp.*,
19:cv-02810-VEC, Dkt. 55 (S.D.N.Y. April 24, 2020)................................................. *passim*

*Grecia v. Bank of New York Mellon Corp.*,
19:cv-02810-VEC (S.D.N.Y) ...................................................................................9

*Grecia v. Cullen/Frost Bankers, Inc.*,
No. 6:21-cv-00016-ADA, Dkt. 13 (W.D.Tex. April 5, 2021) ..................................................4

*Grecia v. MasterCard Int'l Inc. et al.*,
No. 15-cv-9059 (S.D.N.Y. 2015), Dkt. 89......................................................... *passim*

*Grecia v. MasterCard International Incorporated*,
1:15-cv-09059 (S.D.N.Y.) ......................................................................................9

*Grecia v. Samsung Electronics America, Inc.*,
Case No. 20-1831 (Fed. Cir. Jan 7, 2021) .................................................................5

*Grecia v. Sprint Communications Company LP*
1:18-cv-10426 (S.D.N.Y.) ......................................................................................5

*Grecia v. T-Mobile USA, Inc.*,
1:18-cv-10428 (S.D.N.Y.) ......................................................................................5

*Joao Bock Transaction Sys., LLC v. Jack Henry & Assocs., Inc.*,
76 F. Supp. 3d 513 (D. Del. 2014), *aff'd*, 803 F.3d 667 (Fed. Cir. 2015) .............................11

*MyMail, LTD v. ooVoo, LLC*,
Case No. 18-1758 (Fed. Cir. Aug. 16, 2019).................................................................6

*Ohio Willow Wood Co. v. Alps S., LLC,*
   735 F.3d 1333 (Fed. Cir. 2013)..................................................................................7

*Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC,*
   778 F.3d 1311 (Fed. Cir. 2015)..................................................................................7

*Uniloc USA, Inc. v. Amazon.com, Inc.,*
   243 F. Supp. 3d 797 (E.D. Tex. 2017), *aff'd*, 733 F. App'x 1026 (Fed. Cir.
   2018) ..........................................................................................................................10

**Statutes**

35 U.S.C. § 101.................................................................................................... *passim*

35 U.S.C. § 112..........................................................................................................18

## I.    INTRODUCTION

Mr. Grecia—who has brought over 70 cases involving this patent family, 44 of which he voluntarily dismissed[1]—is collaterally estopped from bringing this action.[2]  Grecia has litigated the same validity issues presented here and has lost.[3]  *Every single claim* of the other two patents in his three-patent family have been invalidated, and critically, two claims that are substantively identical to the claim asserted here have been found *indefinite* or *invalid as lacking patent eligible subject matter.*  Recognizing his predicament, Grecia – who others have alleged engaged in behavior "bordering on, if not crossing into, extortion"[4] – is now suing "*in Albright's jurisdiction*" threatening that if companies do not pay "these cases will go to Discovery" and he will get access to coveted "source codes."[5]  Targeting companies en masse, across industries, Grecia has not even assembled a legally cognizable claim.  In his sole direct infringement claim, Grecia mixes and matches PayPal functionality that relates to *consumer* facing features and *merchant* facing features in a manner that precludes infringement under his own infringement theory.  Furthermore, he alleges that PayPal performs only some of the steps of the claim; the rest he alleges are performed by unidentified third parties.  PayPal respectfully requests that the Court dismiss Grecia's complaint with prejudice.

---

[1] According to DocketNavigator, Mr. Grecia has filed 71 patent cases as plaintiff alleging infringement of the patent-in-suit or one or more continuation patents.  *See* Ex. G.

[2] As a matter of efficiency, there is overlap in the indefiniteness and collateral estoppel issues presented here and in *Grecia v. Cullen/Frost Bankers, Inc.,* No. 6:21-cv-00016-ADA, Dkt. 13 (W.D.Tex. April 5, 2021).

[3] *See, e.g., Grecia v. MasterCard Int'l Inc. et al.*, No. 15-cv-9059 (S.D.N.Y. 2015), Dkt. 89 (Ex. B); *Grecia v. Bank of New York Mellon Corp.*, 19:cv-02810-VEC (S.D.N.Y. 2019), Dkt. 55 (Ex. C).

[4] *Samsung Electronics America v. Grecia,* 2:21-cv-00562, Dkt. 19 at 4 (EDPA Mar. 5, 2021).

[5] *Early Warning Services, LLC v. Grecia*, 2:21-cv-01050, Dkt. 1-3 (EDPA Mar. 4. 2021).

## II.  GRECIA'S LITIGATION HISTORY

Since 2014, Grecia has brought **over 70** cases on this three-patent family[6], alleging infringement by a wide range of technologies, from the "TV Everywhere" service used by TV networks, to Amazon's Prime Video and Fire TV, "App Stores," consumer websites that accept credit card payments, point-of-sale payment devices and now mobile payment platforms.

When Grecia's patents were tested, he lost.  In *MasterCard*, Judge Sullivan invalidated claims 12-14 and 24-26 of the asserted '555 patent, and claims 9-10 and 21-30 of the '860 patent based on indefiniteness.  *Grecia v. MasterCard Int'l Inc. et al.*, No. 15-cv-9059 (S.D.N.Y. 2015), Dkt. 89 (Ex. B).  In *Grecia v. Bank of New York Mellon Corp.*, 19:cv-02810-VEC (S.D.N.Y. 2019), Dkt. 55 (Ex. C), the Court invalidated the sole claim of the '308 patent under Section 101 at the Rule 12 stage.  The Federal Circuit summarily affirmed.  *Grecia v. Samsung Electronics America, Inc.*, Case No. 20-1831 (Fed. Cir. Jan 7, 2021).

Yet, Grecia continues to extract settlements with the threat of litigation.  In 13 of his 70 closed litigations, the parties settled prior to any defendant even filing an answer.

When parties do fight, Grecia dismisses or gives up.  In 44 of the closed litigations, Grecia voluntarily dismissed, some shortly after facing a 101 motion.  *See, e.g.*, *Grecia v. T-Mobile USA, Inc.*, 1:18-cv-10428 (SDNY) (dismissing 10 days after defendant moved to dismiss); *Grecia v. Sprint Communications Company LP* 1:18-cv-10426 (SDNY) (same).  When faced with an instituted IPR, Grecia requested **adverse judgement** on the challenged claims.  *MasterCard International Incorporated v. Grecia,* IPR2017-00791, Paper No. 13 (P.T.A.B. Sept. 27, 2017).

Grecia has had a checkered history including engaging in conduct Samsung characterized as "bordering on, if not crossing into, extortion."  *Samsung Electronics America, Inc. et al v.*

---

[6] Ex. G.

*Grecia,* 2:21-cv-00562, Dkt. 19 at 4 (EDPA Mar. 5, 2021) (stating Grecia was "offering to sign a false affidavit about a nonexistent private negotiation since 2014 between Samsung and Grecia" in exchange for "Samsung's agreement to purchase Grecia's portfolio.").

In 2020, Grecia turned to Waco. Grecia warned Early Warning Services ("EWS") that "Grecia will be enforcing only 4 new cases in 2021, **all in Albright's jurisdiction**."[7] *Early Warning Services, LLC v. Grecia*, 2:21-cv-01050, Dkt. 1-3 (EDPA Mar. 4. 2021). Grecia threatened: "Albright respect [sic] the OOVOO CAFC precedent and these cases will go to Discovery… [i]n Albright's discovery, Grecia will demand and get access to each of the 4 cases mobile source codes [sic]." *Id.*

## III.    TECHNICAL BACKGROUND

With all of the claims of the other two patents, and most of the claims of U.S. Patent 8,402,555 invalidated, Grecia asserts dependent claim 16 of the '555 patent. The '555 patent relates to the field of ***digital rights management*** schemes used by creators of electronic products to protect commercial intellectual property copyrights privy to illegal copying using computerized devices" ('555 patent at 1:19-22). As Judge Sullivan found, digital rights management ("DRM") is a generic term for algorithms used to prevent unauthorized copying or distribution of digital media, such as music, movies, or games, by restricting access to the media across devices, such as computers. *Id.*; '555 patent, 1:28–37. The claims of the '555 patent are, in Grecia's own words, analogous to a "hall monitor" verifying a student's "hall pass." *MasterCard*, Dkt. 69 (Grecia Reply Br.) at 7; *id*, Dkt. 89 at 14–15.

According to the '555 patent, traditional DRM systems have two shortcomings. First, they rely on digital content providers to maintain servers to receive and send authorization keys, and

---

[7] All emphases added unless otherwise noted.

second, traditional DRM systems link rights to access content to the machine on which the content was acquired. Failure of either of the server or the user's machine will cause the user to lose access to the content. Grecia's DRM scheme allegedly solves these problems by branding (i.e., writing) the information necessary to associate a user with the digital content into the metadata of the digital content, thereby purportedly enabling the user to access the digital file from any device. *MasterCard*, Dkt. 89 at 8; '555 patent, 2:54–3:7, 4:2–9. According to Grecia, this scheme is akin to the hall monitor writing the necessary information into a log that stays with the hall monitor. *MasterCard*, Dkt. 69 at 7 ("A metaphor here would be a 'hall pass.' The student receives the permission from the teacher… In terms of Grecia's invention, the verification token is the pass. Grecia writes the hall pass to the data store of the hall monitor.")

## IV. GRECIA IS COLLATERALLY ESTOPPED FROM BRINGING THIS ACTION

The validity issues related to claim 16 are identical to the issues litigated in the prior actions. Because (1) the issue was fully litigated in the prior action; (2) the issue was necessary to support the judgment in the prior case; and (3) there exists no special circumstance that would render preclusion inappropriate or unfair, Grecia is collaterally estopped from bringing this action. *Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1314 (Fed. Cir. 2015).

### A. INDEFINITNESS

Grecia is collaterally estopped from asserting claim 16 because Grecia already lost on the issue of whether there is any structure corresponding to the means-plus-function term "computer program product." Judge Sullivan construed a legally indistinguishable claim term "computer product" of the related '860 patent with an identical disclosure, after Grecia had the opportunity to fully brief and present oral argument on the issue. "If the differences between the unadjudicated patent claims and adjudicated patent claims do not materially alter the question of invalidity,

collateral estoppel applies." *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013). No unfairness results from precluding Grecia from re-arguing claim construction on substantively identical terms. The Federal Circuit specifically analyzed and affirmed Judge Sullivan's claim construction order; and both its and Judge Sullivan's decisions are sufficiently firm to be accorded conclusive effect. *Adaptix, Inc. v. AT&T Mobility LLC*, No. 6:12-CV-120, 2015 WL 12696219, at *3 (E.D. Tex. Sept. 29, 2015) (holding "for purposes of issue preclusion, ... 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect."))

Claim 21 of the '860 patent recites a "***computer product***" that performs the same six functions as the claimed "computer program product" in the '555 patent: receiving, authenticating, establishing, requesting, receiving, and writing, which, as seen in Exhibit A, is substantively identical to claim 15 of the '555 patent. Judge Sullivan concluded that "computer product" was a means-plus-function limitation because the term, "especially in our digital age, is hardly much more specific than 'module' or 'device'; it is essentially a 'black box.'" *Id.* at 20 (citing *Verint Sys. Inc. v. Red Box Recorders Ltd.*, 166 F. Supp. 3d 364, 372 (S.D.N.Y. 2016)). He then found that the claim identified only generic components of the "computer product," such as a memory, CPU, communications console, and a non-transitory computer readable medium, which "clearly [did] not provide sufficient structure for performing the claimed functions." *Id.* at 20. Judge Sullivan concluded that claim 21 was indefinite, since the specification "fail[ed] to identify any specialized hardware, software, or algorithms" that were "clearly linked" to the claimed functions. *MasterCard*, Dkt. 89 at 22. Judge Sullivan's decision was affirmed. 780 Fed. Appx. 912 (Fed. Cir. Aug. 20, 2019).

Like "computer product" in claim 21 of the '860 patent, "computer program product" in

claim 16 is only defined by generic components: "a non-transitory computer readable medium" and "a computer readable program code."  Since the patents have identical specifications, there are no "specialized hardware, software, or algorithms" that correspond to the claimed functions, as Judge Sullivan found.

Thus, claim 16 is invalid for indefiniteness under the doctrine of collateral estoppel, and in any case, for the same reasons as articulated by Judge Sullivan.

### B.     PATENT-INELIGIBLE SUBJECT MATTER

Though PayPal would not normally ask this Court to rule on § 101 at this stage, here a legally indistinguishable claim has already been invalidated as patent ineligible, invoking collateral estoppel, and Grecia admits the abstract idea of a hall monitor and hall pass can be resolved under § 101 early as a matter of law.  *SAP Am., Inc. v. Investpic, LLC,* 898 F.3d 1161, 1166 (Fed. Cir. 2018) (affirming Rule 12 invalidity under § 101, and stating "[l]ike other legal questions based on underlying facts, this question may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion.")

#### 1.     *Alice* Step One

Claim 16, like claim 1 of the '308 patent which was invalidated under § 101 at the Rule 12 stage in *Grecia v. Bank of New York Mellon Corp.*, 19:cv-02810-VEC (SDNY), is directed to the abstract idea of receiving and processing access requests.

Claim 16 comprises the same six steps contained in method claim 1 of the '308 patent.  *See* Ex. A, at 3-4.  Just as in claim 1 of the '308 patent, the six steps that recite nothing more than the abstract concept of: (1) ***receiving*** a request for accessing digital media, the request containing a token (e.g., a hall pass) that identifies the requested digital media; (2) ***authenticating*** the token; (3) ***establishing*** a connection with the requesting device; (4) ***requesting*** an identification from the

requestor; (5) **receiving** an identification from the requestor; and (6) **storing** the token and the identification from the requestor.

Judge Caproni determined that claim 1 of the '308 patent "is directed to the abstract idea of storing information about permission and identify for processing access requests." *BNY,* Dkt. 55 at 8. Like claim 1, claim 16 similarly does not "teach a 'specific way to improve the functionality of a computer.'" *BNY,* Dkt. 55 at 11. Instead, it describes a generic exchange of two pieces of information—the "verification token" and the "identification reference." *See id.*, at 13 ("The *sine qua non* of Claim 1 is two types of information—proof of permission and proof of identity—being stored in a generic data store.") The Federal Circuit affirmed Judge Caproni's decision under Rule 36[8]. Thus, Grecia is collaterally estopped from alleging that the claims are not directed to an abstract idea: the asserted claims are substantively identical to claim 1 of the '308 patent, and the issue was fully briefed in the *BNY* litigation. *See, BNY,* Dkt. 41 (Grecia opposition), 53 (Grecia motion for reconsideration), 54 (order denying motion for reconsideration). The invalidation of the '308 patent was based entirely on Judge Caproni's decision[9], and there exists no special circumstance that would render preclusion unfair—the '555 and '308 patents contain an identical disclosure and the claims are undisputedly directed to a process, whether contained on a computer readable medium or not, comprising the same six steps.

Not only does Judge Caproni's final decision create an estoppel, her analysis applies equally to claim 16. Judge Caproni determined that claim 1 of the '308 patent is similar to claims directed to receiving and processing access requests that have been found, and affirmed by the

---

[8] *Grecia v. Samsung Elecs. Am., Inc.*, 833 F. App'x 339 (Fed. Cir. Jan 7, 2021).

[9] *BNY,* Dkt. 55 at 19, fn11 ("Because the '308 Patent's claim is ineligible, these cases must be dismissed. Accordingly, the Court does not address Defendants' alternative argument that Grecia has not alleged that their applications perform all the steps of Grecia's claimed method.")

Federal Circuit, patent ineligible. *BNY,* Dkt. 55 at 16. This rationale applies equally to claim 16. *See, Uniloc USA, Inc. v. Amazon.com, Inc.*, 243 F. Supp. 3d 797 (E.D. Tex. 2017), *aff'd*, 733 F. App'x 1026 (Fed. Cir. 2018) (finding ineligible claims directed to receiving and processing access requests); *Joao Bock Transaction Sys., LLC v. Jack Henry & Assocs., Inc.*, 76 F. Supp. 3d 513 (D. Del. 2014), *aff'd*, 803 F.3d 667 (Fed. Cir. 2015) (finding ineligible claims for authorizing financial transactions).

Furthermore, as with claim 1 of the '308 patent, claim 16 also does "not recite any improvements in computer technology," and "shun[s] any reference to specific computer components, objects or processes," instead using "abstractions." *BNY,* Dkt. 55 at 13. It is not enough to use computers to implement conventional business practices (e.g., licensing), nor is it enough to limit an abstract idea to a "particular technological environment" (e.g., computing devices for "monitoring access to an encrypted digital media"). *Alice*, 134 S. Ct. at 2358; *SAP*, 898 F.3d at 1169 (holding "limitation of the claims to a particular field of information … does not move the claims out of the realm of abstract ideas"). Judge Caproni concluded for the '308 patent, "the combination of Claim 1's steps… recites an abstraction with no concrete form." *BNY,* Dkt. 55 at 18. Similarly, claim 16's recitation of generic computing terms does not change its abstract nature.

Further, as with claim 1 of the '308 patent, the abstract steps of claim 16 can be performed entirely in the human mind. In fact, the claimed "membership verification token" (information that identifies the requested digital media) and "electronic identification reference" (information that identifies the requesting user) could be used in any situation requesting permission based on the user's identity. Grecia himself has analogized the claimed steps to a "hall monitor" verifying a "hall pass." *MasterCard*, Dkt. 69 at 7; *id.*, Dkt. 89 at 14–15. Applying his analogy to the claimed

steps, a hall monitor would receive a request from a student to access a location (such as a location outside of the classroom), the request including a hall pass.  Grecia admits that in this metaphor the hall pass is the "membership verification token."  *Id.*, Dkt. 69 at 4.  The hall monitor would then authenticate the hall pass and request the student for an identification (e.g., a student ID).  Upon receiving the identification, the hall monitor would write down information from the hall pass and the ID (e.g., in a log).  *Id.* at 7 (admitting that the hall monitor "writes the hall pass to the data store of the hall monitor.")  Likewise, Judge Caproni's military police ("MP") analogy is also applicable to claim 15[10].  *BNY,* Dkt. 55 at 14-15.   Judge Caproni concluded this analogy demonstrates "that humans can implement the exact process Claim 1 describes without any reference to or reliance upon computers."  *Id.*  The same is true of claim 16.  Thus, Grecia admits that a human can readily understand and analyze this information, and there is nothing computer-specific about the abstract steps of claim 16.

## 2.    *Alice* Step Two: Asserted Claims Do Not Add Any Inventive Concept

Under *Alice* step two, "[w]hat is needed is an inventive concept in the **non-abstract** application realm." *SAP*, 898 F.3d at 1168.  Because Claim 16, like claim 1 of the '308 patent, merely claims implementing abstract ideas using conventional computer functionality, there are no factual issues to assess under step 2.  As Judge Caproni noted, "Grecia is not able to identify an inventive concept apart from the abstract idea to which Claim 1 is directed."  *BNY,* Dkt. 55 at 18-19.  Grecia solely argued that "step two of the analysis is 'unnecessary [and] redundant because Claim 1's solution is also the 'inventive concept' required to pass step two."  *Id.* at 19.  Judge

---

[10]: An MP at the gate of a secure facility receives a request from a soldier to enter, and the soldier shows his military ID (step A); the MP authenticates the ID (step B); the MP calls headquarters (step C); the MP requests information from headquarters on whether the solder has orders from that facility (step D), and receives confirmation from headquarters that the soldier has been ordered to that facility including an authorization number (step E), and finally the MP writes into a log the soldier's ID and authorization number (step F). *BNY,* Dkt. 55 at 14-15.

Caproni noted that "Grecia thus conflates Claim 1's solution—the abstract idea of storing information about permission and identity for processing access requests—with its purported inventive concept." *Id.*  Because Grecia previously "effectively conced[ed] that the 'only possible inventive concept in [Claim 1] is the abstract idea itself," he is collaterally estopped from arguing that claim 16 contains an inventive concept here. *Id.*

## V.    GRECIA FAILS TO SUFFICIENTLY PLEAD INFRINGEMENT

Grecia's compliant should also be dismissed because Grecia fails to state a claim for infringement.  The complaint does not plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Mr. Grecia fails to plead a cognizable theory of direct infringement.  First, his theory requires combining PayPal's ***consumer-facing*** mobile application with one of PayPal's ***merchant's*** software applications to satisfy the claim limitation "computer program product for use with a computer."   Second, even if the actions of PayPal's ***merchant's*** software were somehow attributable to PayPal, Grecia alleges the merchant software requests and receives the "electronic verification reference" from PayPal's ***servers,*** not the "communications console" Grecia accuses. Finally, Grecia inconsistently accuses two different QR codes as ***the*** "electronic verification reference"—one associated with a ***user account*** and one associated with an ***invoice***—and he fails to allege that either is written into any PayPal metadata.

### A.    Grecia alleges the claimed "computer" is the combination of a PayPal server and an unspecified third-party merchant computer

The asserted claim of the '555 patent recites a "computer program product for use with a computer" that performs all six steps of the claimed method.  As a payment processor, PayPal uses a two-sided network to interface with ***consumers*** on one end, and with ***merchants*** on the other. Grecia vaguely alleges a "PayPal computer program product for use with a computer" performs

all six steps, but the "PayPal computer program product" Grecia accuses is actually two separate software applications running on two separate computers:  PayPal's server-side software to interface with its *consumer application*, and an unspecified third-party *merchant* software application that communicates with PayPal via a *merchant* Invoicing Application Programming Interface ("API").

For the first two limitations—"[A] receiving an encrypted digital media access branding request…" and "[B] authenticating the membership verification token…"—Grecia accuses PayPal's server-side authentication software for authenticating login requests from its *consumer application* (the PayPal Mobile App).  Grecia alleges that the "PayPal computer program product is capable of receiving an access request by receiving a membership verification token (email or mobile number) through the PayPal communications console (Mobile App);" and includes a screenshot of the *consumer* "Log In" screen of the PayPal Mobile App.  Dkt. 1-2 at 2, Compl. at ¶ 15.  Grecia alleges that the "PayPal computer program product is capable of authenticating the membership verification token with a PayPal User ID database."  Dkt. 1-2 at 3.  These allegations are directed to PayPal's servers, which authenticate consumer login requests.

But for the third, fourth and fifth limitations—"[C] establishing a connection," "[D] requesting an electronic verification reference," and "[E] receiving the at least one electronic identification reference" —Grecia points to operations that are performed by *third-party software applications running on third-party computers* that integrate with PayPal's *merchant-facing* invoicing functionality.  Grecia alleges that the "PayPal computer program product is capable of establishing an API communication related to the PayPa [sic] QR RESTful API."  Dkt. 1-2 at 4, Compl. at ¶ 17.  Grecia cites a developer document for PayPal's Invoicing API, which is used by PayPal merchants "to create, send, and manage invoices."  Ex. D.  The Invoicing API allows

**merchants who use PayPal's developer platform** to "create and send invoices with data that they already have in their order management system." Ex. E.  PayPal's documentation for the Invoicing API explains, "[i]f you have your own product UI, you can consume the Invoicing API and **integrate it into your product**."  *Id.* The sample software code Grecia cites (Dkt. 1-2 at 4) is an API call via the HTTP POST method to PayPal's servers; third-party merchants who use PayPal's developer platform may integrate this code into their own software applications to request and receive QR codes from PayPal's **merchant-facing** servers for a particular invoice.  *See* Dkt. 1-2 at 5 ("**Modify the code**… After you copy the code in the sample request, modify the following:..")

This Court has granted a motion to dismiss on similar facts.  In *Gabriel De La Vega v. Microsoft Corp.,* W-19-CV-00612-ADA, Dkt. 36 at 6 (W.D. Tex. Feb. 7, 2020), the plaintiff pled joint infringement of a method claim by two separate users, but failed to satisfy the *Twombly/Iqbal* pleading standard for joint infringement by the combined acts of multiple parties, which requires "facts sufficient to allow a reasonable inference that all steps of the claimed method are performed and either (1) one party exercises the requisite 'direction and control' over the other's performance or (2) the actors form a joint enterprise that such performance of every step is attributable to the controlling party."  *Id.* at 6.  Here, no amount of legerdemain can overcome the fact that the evidence Grecia relies upon relates to software code that **merchants** integrate into their own applications to execute on their own computers, and Grecia has not even pled joint infringement.

Grecia's own pleadings admit there is no single "PayPal computer program product" executed by PayPal's computers; his infringement theory requires combining PayPal's server-side software for **consumer** logins, and unidentified third-party software executing on separate computers for integrating with PayPal's **merchant-facing** applications.

B.      The "computer" Grecia identifies does not establish a connection with the
        PayPal mobile application

Grecia's allegations fail even assuming the claims permit aggregation of the actions of

PayPal's severs and the third-party application (which they do not).  The third, fourth, and fifth

limitations of claim 15 require "[C] establishing a connection **with the at least one**

**communications console**," "[D] requesting an electronic verification reference… **from the at least**

**one communications console**," and "[E] receiving the at least one electronic identification

reference **from the at least one communications console**."  Grecia's pleadings unambiguously

accuse the PayPal mobile application as satisfying the "communications console" limitation, but

the sample code Grecia cites for limitations C, D, and E relates to a request for a QR code that is

sent from a third-party software application, as discussed above, to **PayPal's servers**, not the

PayPal Mobile App. *See* Ex. D ("POST https://**api-m.sandbox.paypal.com**/v2/invoicing/generate-

next-invoice-number").   Indeed, for these limitations, Grecia does not even allege that any

connection is established between the "PayPal computer program product" and the Mobile

Application—Grecia states only that the "PayPal computer program product is capable of

establishing an API communication **related to** the PayPa [sic] QR RESTful API."  Complaint ¶

17.  Undercutting his own infringement theory, Grecia unambiguously alleges that the "QR code

identifier," which he alleges satisfies as the "electronic verification reference" claim limitation, is

requested and received "from the PayPal QR API **web service**."  Compl. at ¶ 19, Dkt. 1-2 at 5. [11]

C.      Grecia fails to allege that PayPal performs the "branding" step F

[11] Further muddying the waters, Grecia's infringement charts also cite a **third consumer-facing**
functionality, which allows a user to either display a QR code associated with their account on
their mobile app to receive a payment, or scan a QR code associated with an account or invoice
to make a payment.  Dkt. 1-2 at 1, 4.  But the Mobile App undisputedly neither requests nor
receives a QR code from itself, which is required under Grecia's infringement theory.

Finally, Grecia fails to even allege how the final limitation of claim 15 (step F) is satisfied by the "PayPal computer program product." Grecia alleges the user's "email or mobile number" satisfies the "membership verification token" limitation (Dkt. 1-2 at 6), but none of the evidence Grecia cites for the final limitation of claim 15 plausibly suggests this information is "branded" or written into metadata. Rather, the two documents Grecia cites merely shows that PayPal **maintains** metadata. Indeed, Grecia only highlights the term "metadata" in a number of XML code snippets that a PayPal **merchant** may receive in response to a request to "obtain the formatting information" for a particular daily activity report. Ex. F. ("In the response to retrieving metadata... the response returns the number of columns, rows, pages, and lines per page are present in the format of the report with reportID 131.") None of this evidence even plausibly shows the user's "email or mobile number" is written into any metadata.

With respect to writing "the electronic identification reference" as additionally required by the final limitation of claim 15, Grecia alleges that the "PayPal Computer Program Product" writes the "PayPal QR identifier" into the "PayPal Computer Product metadata." Dkt. 1-2 at 6, Compl. ¶ 12. But the "PayPal QR identifier" Grecia identifies for step F is **not** the "electronic identification reference" that Grecia identifies in steps D and E. As discussed above, for steps D and E, Grecia identifies a QR code that is associated with a particular PayPal **invoice** as the "electronic identification reference." But for step F, Grecia identifies a "PayPal QR identifier" that is associated with a particular PayPal **account**. Dkt. 1-2 at 1 ("The PayPal computer program product is capable of associating a **PayPal account identifier** with a **PayPal QR identifier**.") Grecia thus accuses two different QR codes as satisfying the "electronic identification reference," contrary to the claims. And, as discussed, none of the evidence Grecia cites supports his allegation that either QR code is written into PayPal's metadata.

14

Even accepting Grecia's pleadings as true, there is no plausible infringement by PayPal.

## VI.     CONCLUSION

For the foregoing reasons, PayPal respectfully requests the Court to dismiss without prejudice Grecia's claims for infringement of the '555 patent, and find claim 15 of the '555 patent to be patent-ineligible under § 101 and indefinite under § 112.

Dated: June 7, 2021                    By:    _/s/ Robert N. Kang_____
                                            Katherine Vidal
                                            CA State Bar No. 194971
                                            kvidal@winston.com
                                            (pending *pro hac vice*)
                                            WINSTON & STRAWN LLP
                                            275 Middlefield Road, Suite 205
                                            Menlo Park, CA 94025
                                            Telephone: (650) 858-6500
                                            Facsimile: (650) 858-6550

                                            Robert N. Kang
                                            CA State Bar No. 274389
                                            rkang@winston.com
                                            WINSTON & STRAWN LLP
                                            50 California Street, 35th floor
                                            San Francisco, CA 94104
                                            Telephone: (415) 591-1000
                                            Facsimile: (415) 591-1400

                                            James Winn
                                            IL State Bar No. 6307338
                                            JWinn@winston.com
                                            (pending *Pro Hac Vice*)
                                            Saranya Raghavan
                                            IL State Bar No. 6321346
                                            sraghavan@winston.com
                                            (pending *pro hac vice*)
                                            WINSTON & STRAWN LLP
                                            35 W. Wacker Dr.
                                            Chicago, IL 60601-9703
                                            Telephone: (312) 558-5600
                                            Facsimile: (312) 558-5700

                                            Juan Yaquian
                                            TX Bar No. 24110559
                                            JYaquian@winston.com
                                            (pending *Pro Hac Vice*)
                                            WINSTON & STRAWN LLP
                                            800 Capitol St., Suite 2400
                                            Houston, TX 77002
                                            Tel. (713) 651-2600
                                            Fax (713) 651-2700

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 7, 2021, a true and correct copy of DEFENDANT PAYPAL, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT was electronically filed with the Clerk of Court using the CM/ECF system, which sends notifications of such filing to all counsel of record who have consented to accept service by electronic means.

*/s/ Robert N. Kang*
Robert N. Kang